[Cite as *In re S.B.*, 2015-Ohio-4284.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: S.B. | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | |
| | : | Case No. 2015CA00012 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Stark County Court
                                of Common Pleas, Family Court
                                Division, Case No. 2014-JCR-01759

JUDGMENT:                       Affirmed

DATE OF JUDGMENT:               October 13, 2015

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                           ANTHONY KOUKOUTAS
Prosecuting Attorney                      116 Cleveland Ave., North
                                          Canton, Ohio 44702
By: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
110 Central Plaza South, Suite 510
Canton, Ohio 44702

*Baldwin, J.*

{¶1}   Appellant S.B. appeals a judgment of the Stark County Common Pleas Court, Family Court Division, finding him delinquent by reason of domestic violence (R.C. 2919.25(C)).  Appellee is the State of Ohio.

<u>STATEMENT OF FACTS AND CASE</u>

{¶2}   Appellant and his girlfriend, A.C., had a child together.  As of July 27, 2014, the date of the incident giving rise to the charge of delinquency by reason of domestic violence, they had been together almost two years.  A.C. lived with her mother, her stepfather, and her baby daughter, while appellant lived with his family.

{¶3}   A conflict developed between the two families regarding visitation with the baby.  Appellant wanted to have visitation, while his mother refused to acknowledge that the child was his.  She called Child Services claiming that the child was not her granddaughter, and threatened to sue because she believed S.B. had been forced to sign the birth certificate.  Child Services told A.C. not to allow S.B.'s family to see the child until a formal visitation schedule was set.

{¶4}   On July 27, 2014, A.C. and appellant were together in A.C.'s bedroom. Appellant's mother or sister called him, asking him to bring the baby to their home to visit.  A.C. told appellant that he could not take the child.  He responded by punching the bed and screaming at A.C., "Motherfucker, I'll fuck you up, bitch."  A.C. was afraid that appellant would harm her physically, and she believed his threat to cause her physical harm was credible.

{¶5} A.C.'s mother and stepfather heard S.B. screaming. When A.C.'s mother ran into the room, appellant confronted her while flexing at her, without his shirt on. A.C. jumped between them, asking appellant to calm down. Appellant responded by lifting the bed into the air. A.C.'s mother told appellant to leave the home.

{¶6} Instead of leaving, appellant continued to scream at A.C. He went into the living room, where he kicked the sofa near where the baby was seated in a jumper. A.C. and her mother went outside, hoping that appellant would follow and leave the house, but he screamed, "What the fuck ever," and slammed the door shut. A.C.'s mother called 911.

{¶7} Officer Dominic Antenora of the Perry Township Police Department responded to the call. A.C. told him that a verbal dispute ensued over child custody issues, that appellant had threatened her with physical harm, and she believed the threat to be credible. Appellant admitted that they had a verbal dispute, but denied any threats of physical harm.

{¶8} Appellant was charged with delinquency by reason of domestic violence. The case proceeded to trial before a magistrate. Appellant testified that he became angry when A.C. refused to let him take the baby to visit his family, and said, "This is fucking bullshit." He testified that he got his clothes to leave, but could not find his car keys, so he sat in his car until the police arrived. He denied flipping the bed in the air, denied flexing, denied kicking anything, and denied threatening anyone.

{¶9} Following the hearing, the magistrate found the complaint to be true and recommended that appellant be sentenced to community control, with the special condition that he successfully complete the Alliance Municipal Court's anger

management program. Appellant filed an objection, arguing that the decision was against the manifest weight and sufficiency of the evidence. The judge overruled the objection and adopted the magistrate's decision as the decision of the court.

{¶10} Appellant assigns a single error:

{¶11} "THE JUVENILE'S ADJUDICATION AS A JUVENILE OFFENDER WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶12} Appellant argues that the magistrate and the court erred in believing the testimony of A.C., her mother, and her stepfather rather than his own testimony.

{¶13} When reviewing the sufficiency of the evidence in a juvenile case, we apply the same standard of review applicable to criminal convictions. *In re Watson,* 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989). The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶14} In reviewing the legal sufficiency of the evidence to support a verdict by the trier of fact, it is the mind of the trier of fact, rather than the reviewing court, that must be convinced. *State v. Thomas,* 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982). In applying this standard of review, the question of credibility of conflicting testimony and

the weight to be accorded certain evidence are matters left primarily to the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).  A reviewing court should not disturb the decision below unless it finds that reasonable minds could not reach the conclusion reached by the trier of fact. *Jenks, supra*, 61 Ohio St.3d at 273.

{¶15}  In determining whether a verdict is against the manifest weight of the evidence, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶16}  Domestic violence is defined by R.C. 2919.25(C), which states, "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."

{¶17}  In the instant case, the evidence presented at trial was legally sufficient to allow a reasonable trier of fact to find the offense of domestic violence proven beyond a reasonable doubt.  A.C. testified that when she told appellant he could not take the baby, he began punching the bed and screaming, "Motherfucker, I'll fuck you up, bitch." She believed he would physically harm her, and she was afraid.  She testified that when her mother came into the room, he flexed at her.  She testified that he continued screaming, and kicked the couch and a kitchen chair.  When she and her mother went outside, he slammed the door, screaming, "What the fuck ever."

{¶18} A.C.'s mother testified that she was cleaning her room when she heard appellant screaming. She heard him say, "I will fuck you up, bitch" to her daughter. She went into her daughter's room, where appellant confronted her by flexing at her, without his shirt on. He lifted up A.C.'s bed and threw it in the air. She also testified that appellant continued screaming, he kicked the couch near where the baby was seated in a jumper, and he kicked a chair.

{¶19} This testimony was sufficient, if believed by the trier of fact, to support a finding of delinquency by reason of domestic violence.

{¶20} As to appellant's manifest weight claim, appellant argues that A.C., her mother, and her stepfather all have a similar motivation to lie, because they do not want him to gain visitation with his daughter. However, appellant has a similar motivation to lie, as an adjudication of domestic violence would impact any custody and visitation decision. Appellant injected the issue of the impact of the case on custody and visitation into the trial, and the magistrate was therefore aware of the possible motivation of all of the witnesses to lie. However, the magistrate, who was in the best position to assess the credibility of the witnesses, chose to believe A.C. and her family and to disbelieve appellant. The judgment was not against the manifest weight of the evidence.

{¶21} The assignment of error is overruled. The judgment of the Stark County Common Pleas Court, Family Court Division, is affirmed. Costs are assessed to appellant.

By: Baldwin, J.

Wise, P.J. and

Delaney, J. concur.